IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JAMES JONES                                                                                           PLAINTIFF

VS.                                        CASE NO. 10-CV-1033

STRONG-HUTTIG PUBLIC SCHOOL
DISTRICT, ET AL.                                                                                  DEFENDANTS

## MEMORANDUM OPINION

Plaintiff James Jones brings this action against Defendants Strong-Huttig Public School; former Superintendent of Strong-Huttig Public School, Dr. Terry Davis, in her individual and official capacities; and the Strong-Huttig School Board members in their official capacities. Plaintiff claims that Defendants violated Arkansas law by not complying with Strong-Huttig Public School's Reduction in Force Policy ("RIF Policy") when Plaintiff's assistant-superintendent position was eliminated at the end of the 2008–2009 school year. Specifically, Plaintiff claims that Defendants violated the RIF Policy by not allowing him to fill a vacant position within the school district he was qualified for when his position was eliminated. Plaintiff also alleges violations of the Americans with Disabilities Act, 42 U.S.C.A. § 12101 ("ADA"). Plaintiff claims that Superintendent Davis discriminated against him on the basis of his disability by restricting his ability to apply for a principal position in a timely manner. Plaintiff seeks money judgments against all Defendants.

This matter was tried to the Court without a jury on June 4, 2012. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. The Court now renders its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

1

**FINDINGS OF FACT**

Plaintiff James Jones was employed as the assistant superintendent of the Strong-Huttig School District from July 2005 to June 2009. In January 2009, Plaintiff began to have heart complications. He was later diagnosed with congestive heart failure. Plaintiff took a leave of absence from work and underwent surgery on February 18, 2009 in order to have a pacemaker and a defibrillator implanted. Plaintiff spoke with school officials by telephone after his surgery and informally updated them on his recovery status while he was absent.

On March 5, 2009, Plaintiff visited the Strong-Huttig School District offices for the first time since he took his leave of absence in January. During this visit, Plaintiff met with his superior, Dr. Terry Davis, the former superintendent of the Strong-Huttig School District. Plaintiff updated Dr. Davis on his health status and reported to her that he would be able to return to work, with some restrictions, by the end of March. Dr. Davis informed Plaintiff that she would need to see full clearances from his doctors before he returned to work. Plaintiff and Dr. Davis also discussed the possibility that Plaintiff's position would be eliminated by the school board as a cost-cutting measure. This news came as no surprise to Plaintiff. Even before he took his medical leave of absence, he was aware his position might be eliminated. Plaintiff asked Dr. Davis to invoke the school's Reduction in Force Policy ("RIF Policy") in the event that his position was eliminated by the school board. The relevant portion of Strong-Huttig School District's Reduction in Force Policy states:

> Section One: The School Board acknowledges its authority to conduct a reduction in force (RIF) when a decrease in enrollment or other reason(s) make such a reduction necessary or desirable….If a teacher is non-renewed under this policy, he or she shall be offered an opportunity to fill a vacancy for which he or she is qualified for a period of up to two (2) years. (Plaintiff's Exhibit #3).

2

Plaintiff believed that, if Dr. Davis received school board approval to invoke the RIF Policy when terminating him, he would be entitled to automatic placement in any open position he was qualified for within the school district. Plaintiff believed he needed to specifically request that the RIF Policy be applied to him because it was his understanding that the plain terms of the policy only applied to teachers and not to assistant superintendents. Dr. Davis, being unfamiliar with the RIF Policy, was not sure whether it could be applied to Plaintiff.

On March 20, 2009, approximately three weeks after his meeting with Dr. Davis, Plaintiff received a letter from Dr. Davis informing him that the position of assistant superintendent was being eliminated for the upcoming school year. The full text of that letter reads as follows:

> "This letter is to inform you that the position of Assistant Superintendent will not be available beginning with the 2009-2010 school year due to Reduction In Force. The only administrative position open is for high school principal. You are welcome to apply for this position upon receiving a full medical release from your doctors." (Plaintiff's Exhibit #2).

Upon receiving the letter, Plaintiff noted that Dr. Davis used "Reduction In Force" language to explain the reason for his termination. Plaintiff believed that Dr. Davis had invoked the RIF Policy in his case and that he might receive automatic placement in the open high school principal position. An application for the principal position was included with the letter.

To follow up on their previous conversation and the March 20 letter, Plaintiff called Dr. Davis to remind her that he was expecting to be able to return work at some point in March with a few restrictions.[1] It was during this phone conversation that it became clear to Plaintiff that Dr. Davis was requesting full clearances from each of his doctors as a prerequisite both for returning

---

[1] Plaintiff's contract term as Assistant Superintendent was set to run through June 30, 2009. Therefore, Plaintiff was to remain employed as Assistant Superintendent through June, regardless of the fact that his position would not be available in the upcoming 2009-2010 school year.

3

to work as assistant superintendent and for being considered for the high school principal position. Dr. Davis explained that this requirement was to ensure that Plaintiff was capable of safely functioning in his current position as Assistant Superintendent and the open principal's position that he had shown interest in. At this point in time, Dr. Davis had not received any official documentation regarding Plaintiff's current state of health since he took a leave of absence in January.[2] Plaintiff told Dr. Davis that full clearances from each of his doctors likely could not be obtained until May 2009.

Plaintiff ultimately did not submit an application to be considered for the high school principal position. On April 7, 2009, the Strong-Huttig school board voted to fill the vacancy. Despite receiving full clearances from his doctors in May 2009, Plaintiff did not return to work as Assistant Superintendent prior to the expiration of his contract on June 30, 2009. In July 2010, Plaintiff applied for and was given the job of Strong-Huttig Elementary School librarian. Plaintiff has held this position for over two years.

Plaintiff has never asked for, nor does he require, any special accommodations to perform the essential functions of his current position as librarian. Had Plaintiff applied for and been allowed to fill the high school principal position, he states that as of May 2009, when he received full clearances from his doctors, he would not have required any special accommodations to perform the essential functions of the principal position.

## CONCLUSIONS OF LAW

Plaintiff claims that Defendants violated Arkansas law by incorrectly applying the RIF Policy. Plaintiff further claims that Defendants violated the Americans with Disabilities Act by

---

[2] Dr. Davis testified that she heard less-than-encouraging reports about Plaintiff's state of health from other school officials during Plaintiff's absence. These reports caused Dr. Davis to doubt whether Plaintiff would ever be healthy enough to come back to work at the school.

4

preventing Plaintiff from submitting a timely application for the high school principal position.[3] The Court will address each of Plaintiff's claims separately.

### I.   State law claims

Plaintiff claims that Defendants violated state law by refusing to follow Strong-Huttig Public School's RIF policy.  Specifically, Plaintiff claims that, upon the elimination of his Assistant Superintendent position, the RIF Policy required Defendants to offer him open school district positions for which he was qualified.  At no time has Plaintiff stated precisely which Arkansas statute he claims has been violated by Defendants' application, or lack thereof, of the RIF Policy. In his Complaint and pre-trial disclosures, Plaintiff only refers to the violation of "State Law."  Because Plaintiff's claim involves Strong-Huttig School District's RIF Policy, the Court will begin its analysis with the Arkansas Teacher Fair Dismissal Act, the statute that governs RIF Policy requirements for Arkansas school districts.

The Arkansas Teacher Fair Dismissal Act applies to public school teachers.  ARK. CODE ANN. § 6-17-1501.  The act defines a "teacher" as "any person, exclusive of the superintendent or assistant superintendent…who is required to hold a teaching license from the State Board of Education as a condition of employment."  ARK. CODE ANN. § 6-17-1502.  The act requires school districts to "substantially compl[y] with all provisions of…the school district's applicable personnel policies" whenever a teacher is terminated, suspended, or has his contracted non-renewed.  ARK. CODE ANN. § 6-17-1503.  The act further requires every school district to have a written Reduction in Force Policy.  ARK. CODE ANN. § 6-17-201.

---

[3] Plaintiff's Complaint (ECF No. 1) also alleges that Dr. Davis violated Arkansas Department of Education rules by discussing his job performance with unauthorized persons without Plaintiff's consent and without giving Plaintiff an opportunity to respond.  There was no evidence of this alleged violation presented at trial.  Accordingly, it will not be addressed by the Court in this opinion.

Strong-Huttig Public School has a written RIF Policy. The RIF Policy governs the procedure for terminating teachers when budgetary concerns and school district needs warrant a reduction in staff. (Plaintiff's Exh. #3). The policy provides that a Reduction in Force can only be conducted at the direction of the Strong-Huttig School Board. *Id*. The RIF Policy further provides that a teacher who is non-renewed under the policy "shall be offered an opportunity to fill a vacancy for which he or she is qualified for a period of up to two (2) years." *Id*.

Plaintiff, as a former assistant superintendent, was explicitly excluded from the definition of "teacher" found in the Teacher Fair Dismissal Act. Strong-Huttig Public School's RIF Policy is equally as clear that it applies to teachers, not assistant superintendents. In fact, Plaintiff admits that he was not covered by the terms of the RIF Policy. However, he contends that, during his March 2009 meeting with Dr. Davis, she agreed to have the RIF Policy invoked in his case as an exception to the general rule. Plaintiff claims this is evidenced by the fact that Dr. Davis used "Reduction in Force" language in the letter informing Plaintiff that his assistant superintendent position was being eliminated for the 2009-2010 school year.

Plaintiff admits that, whatever understanding he might have reached with Dr. Davis, she did not have the power to invoke the RIF Policy in his case without school board approval. ARK.CODE ANN. § 6-17-201. Assuming *arguendo* that the school board had the power to apply the RIF Policy to Plaintiff if asked to do so, it is undisputed that the school board never agreed to take this action. While Dr. Davis used RIF Policy language in her letter, this inclusion was not at the direction of the school board. The evidence shows that the RIF Policy language was mistakenly included due to Dr. Davis' misunderstanding of how the RIF Policy was to be applied. The mistaken inclusion of this language alone did not, and could not, have the effect of bringing Plaintiff within the terms of the RIF Policy. Furthermore, the inclusion of an

6

application for the principal's position with the letter, along with his conversations with Dr. Davis about the application requirements, should have signaled to Plaintiff that the RIF Policy and its automatic-placement provisions were not actually being invoked in his favor. For these reasons, the Court finds that Defendants did not violate the Teacher Fair Dismissal Act, or any other Arkansas statute, by not applying the RIF Policy to Plaintiff. Defendants substantially complied with their own written personnel policies when they declined to renew Plaintiff's contract, and they were not obligated to automatically place him in another position for which he was qualified.

## II.     Americans with Disabilities Act

Plaintiff claims that Dr. Davis's requirement that Plaintiff receive full medical clearances from his doctors in order to return to work or to be considered for the open principal's position violated the ADA.[4] At their in-person meeting in early March 2009, Dr. Davis first informed Plaintiff that she would need full clearances from his doctors before he would be allowed to return to work. Dr. Davis' letter re-stating this doctor's clearance requirement was sent on March 20, 2009. A few days later, Dr. Davis again confirmed this requirement during a telephone conversation with Plaintiff. Plaintiff told her that he might not be fully cleared to return to work until May 2009. On April 7, 2009, the principal's position was filled by the school board. Plaintiff contends that this doctor's clearance requirement was unreasonable because he would have been fully cleared for work by the time the contract term for the principal position was set to begin, even if he was not cleared to work at the time he submitted an

---

[4] Plaintiff's pre-trial disclosure (ECF No. 23) states that an issue of fact to be contested was "whether defendant terminated Plaintiff's position while he was disabled and whether Defendant attempted to make reasonable accommodations." However, Plaintiff submitted no evidence that contradicted Defendants' claim that Plaintiff's assistant-superintendent position was eliminated solely for financial reasons. Rather, Plaintiff's evidence at trial of lack of accommodation under the ADA focused only on whether he was prevented from applying for the open principal's position.

7

application. Plaintiff argues that the clearance requirement effectively prevented him from being able to apply for the principal's position in a timely manner. Defendants respond that Plaintiff cannot prevail on his ADA claim because he does not meet the statute's definition of a disabled individual.

In order to establish an ADA claim, Plaintiff must show that he was disabled within the meaning of the ADA, that he was qualified to perform the essential functions of the principal's position with or without accommodation, and that he suffered an adverse employment action because of his disability. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999). The threshold issue is whether Plaintiff's heart condition qualifies as a disability under the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"  42 U.S.C. § 12102.  In this case, Plaintiff appears to argue that he had an actual physical impairment, not that he was regarded as disabled by Defendants.[5]

In order for an impairment to qualify as substantially limiting a major life activity, Plaintiff must show that he was:

    (i)        Unable to perform a major life activity that the average person in the general population can perform; or

---

[5] In his closing statements, Plaintiff's attorney summarized his ADA grievance as follows: "What Mr. Jones is saying is that clearly he had a disability during this time. Clearly he was a very sick man. And to say to him, and to make the presumption that you can't do the job because of your physical limitations and then to say to him we can consider you [for the principal's position] once you get clearances from all of your doctors, and then three weeks later the [principal's] position is filled, is unreasonable and it discriminates against him." (Trial Transcript at 105). In his pre-trial disclosure (ECF No. 23), Plaintiff referred to a lack of "reasonable accommodations" by Defendants. Reasonable accommodations apply only to individuals who claim to be actually disabled rather than regarded as disabled. *Weber v. Strippit, Inc*., 186 F.3d 907, 917 (8th Cir. 1999). Accordingly, it does not appear that Plaintiff is making a regard-as disabled claim.

>   (ii)     Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "To determine whether an individual is substantially limited in a major life activity, we consider: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 519 (8th Cir. 2011) (quoting *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 (8th Cir. 2010)).

Plaintiff did not explicitly present evidence of any major life activity that was substantially limited by his congestive heart failure. Because Plaintiff was forced to take a leave of absence from the end of January 2009 to March 2009 when he received partial clearances from his doctors, the Court assumes that Plaintiff's position is that he was substantially limited in the major life activity of working during this period.

While Plaintiff's heart condition, which resulted in his surgery and hospitalization, certainly qualified as an "impairment" under the ADA, this impairment is not assumed to be substantially limiting. *Weber v. Strippit, Inc.*, 186 F.3d 907, 913 (8th Cir. 1999) (holding that heart disease does not qualify *per se* as an actual disability under the ADA). Applying the relevant criteria to this case, it is clear that Plaintiff's impairment was not substantially limiting. While Plaintiff's heart condition was certainly serious, Plaintiff admits that he was cleared to return to work with some restrictions in March 2009 and cleared to return with no restrictions in May 2009. This leaves only a period of roughly two months where Plaintiff was unable to work and a period of roughly two months where he would have had to work with restrictions. These

restrictions included not lifting heavy objects, not driving, and resting periodically throughout the day if needed. Plaintiff testified that he did not anticipate any limitations or the need for any accommodations if he was allowed to fill the principal's position. The relatively short duration of Plaintiff's impairment, its moderate impact on his short-term ability to work, and its complete lack of impact on his long-term ability to work preclude finding that Plaintiff had a substantially limiting impairment during the period in March 2009 when he was pursuing the principal's position. *See Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th Cir. 2000) (holding that even though continued treatment and medication would be necessary for plaintiff's heart condition, there was no substantial limitation to working when medical restrictions only lasted a few months after heart attack).

Because Plaintiff has not presented sufficient evidence of being substantially limited in a major life activity, the Court finds that his heart condition does not qualify as a disability under the ADA. For this reason, Plaintiff is not entitled to ADA protection.

## CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court finds that Defendants are entitled to judgment in their favor and against Plaintiff James Jones. A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 11th day of September, 2012.

       /s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge